# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 17, 2014        Decided February 18, 2014

No. 11-3029

UNITED STATES OF AMERICA,
APPELLEE

v.

ERIC MAURICE BRODIE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00235-1)

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Margaret E. Barr*, Assistant U.S. Attorney, argued the cause for appellee. With her on the briefs were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *David B. Kent*, Assistant U.S. Attorneys.

Before: TATEL, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  While waiting to execute a search warrant at the home of an arrested murder suspect, police saw defendant Eric Brodie leave the house. They pulled up to Brodie, who was by then on the sidewalk a few houses away from the house to be searched; they ordered him to put his hands on a nearby car.  Brodie obeyed.  A few seconds later, he fled.  Before being caught, he jettisoned three weapons, and in a pat down the officers recovered crack cocaine.

The government advances three alternative arguments as to why the weapons and crack need not be suppressed under the Fourth Amendment: (1) Brodie's putting his hands on the car for a few seconds did not amount to submission to the police, so no seizure occurred; (2) any seizure was reasonable because it was conducted in the execution of a valid search warrant; and (3) Brodie's flight and abandonment of the weapons purged the taint of any illegal seizure.  Controlling authorities compel us to reject all three and therefore to reverse the judgment of conviction.

\* \* \*

We begin with a brief account of the facts before exploring their relation to the government's three arguments. In anticipation of executing a search warrant at the townhouse of Jerome Earles, a murder suspect in police custody, two officers parked their car around the corner from the house, waiting to be joined by homicide detectives.  A few minutes later, Deputy Marshal Clark saw Brodie leave the townhouse. According to Clark, Brodie "looked . . . [h]inked up" when he saw the officers but continued to walk down the sidewalk,

away from the townhouse and toward the corner where the officers were parked. Because Brodie had left the house they planned to search, the officers (presumably suspecting he might be in cahoots with Earles) decided to stop and identify him. They pulled their car parallel to Brodie (who was now two townhouses away from Earles's); Clark got out of the car and told Brodie to put his hands on a nearby car. Brodie complied. But when Clark turned a few seconds later to give an instruction to his partner, Brodie took off. As the officers chased him he discarded three guns and finally dropped to the ground when an officer threatened to tase him. He proved to be in possession of crack cocaine.

The district court denied Brodie's motion to suppress the evidence of weapons and crack. In a plea agreement Brodie acknowledged unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), but retained the right to appeal the district court's denial of the suppression motion. The district court sentenced him to fifteen years in prison, the mandatory minimum under the Armed Career Criminal Act, which the government concedes does not apply to Brodie in light of *Descamps v. United States*, 133 S. Ct. 2276 (2013). We now consider whether the district court erred in denying the motion to suppress.

* * *

For purposes of the Fourth Amendment a seizure occurs when physical force is used to restrain movement or when a person submits to an officer's "show of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The government concedes that the police made a show of authority when they ordered Brodie to put his hands on the car. But they claim that he didn't submit, arguing that the compliance was too "momentary" to constitute submission. Brodie says that he

submitted by putting his hands on the car, and that therefore he was seized for the brief period between compliance and flight. We review de novo the question of when a seizure occurs. *United States v. Maragh*, 894 F.2d 415, 417-18 (D.C. Cir. 1990); see also *Ornelas v. United States*, 517 U.S. 690, 697-98 (1996) (holding that district court decisions on ultimate questions of reasonable suspicion and probable cause are to be reviewed de novo).

We can see no basis for classifying Brodie's action—putting his hands on the car when told to do so by the police—as anything other than full compliance with the officer's request. Nothing suggests, for example, that the compliance was feigned. Cf. *United States v. Garcia*, 516 F.2d 318, 320 (9th Cir. 1975). In fact, the district court found that "Mr. Brodie put his hands on the car *and then* decided that he was going to run." Motions Hearing Tr. 75, July 26, 2010 (emphasis added). Nor does anything in the record suggest that Brodie had some ulterior purpose in putting his hands on the car, such as a belief that doing so would facilitate escape. Contrary to the government's position, the short duration of Brodie's submission means only that the seizure was brief, not that no seizure occurred. Later acts of noncompliance do not negate a defendant's initial submission, so long as it was authentic. See *United States v. Brown*, 401 F.3d 588, 595 (4th Cir. 2005); see also *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006).

The government argues that our decision in *United States v. Washington*, 12 F.3d 1128 (D.C. Cir. 1994), requires a contrary outcome. There we found that a person's briefly pulling over in response to an officer's flashing lights, followed by the defendant's driving off "before [the officer] even reached the car," did not amount to submission. *Id.* at 1132. But putting one's hands on a car when ordered to do so is quite different from stopping a car just until the moment

that an officer's almost inevitable exit provides an improved chance of escape. Brodie's gesture had no such advantage, and would almost surely have culminated in a search but for Clark's momentary diversion to speak with his colleague. Similarly, in the two *Brown* cases cited above, where defendants on foot complied with orders to put their hands on the roof of a car, the courts found the requisite submission.

\* \* \*

Finding that a seizure occurred, we turn to whether that seizure was reasonable within the meaning of the Fourth Amendment. The government has not claimed either probable cause or reasonable suspicion. Rather, it argues that the case belongs in the set of seizures deemed reasonable only because they are incident to the execution of a search warrant. *Michigan v. Summers*, 452 U.S. 692, 704-05 (1981).

After the district court decided Brodie's suppression motion, the Supreme Court issued its opinion in *Bailey v. United States*, 133 S. Ct. 1031 (2013), clarifying the limits of the *Summers* doctrine. While confirming the existence of an exception for seizures made during the execution of search warrants, the Court emphasized its limits, saying it applies only "to those who are present *when* and *where* the search is being conducted." *Id*. at 1040 (emphases added); see also *id*. at 1038 ("In *Summers* and later cases the occupants detained were found *within or immediately outside* a residence *at the moment* the police officers executed the search warrant." (emphases added)); *id*. at 1038 ("When law enforcement officers execute a search warrant, safety considerations require that they secure the premises, which may include detaining *current occupants*." (emphasis added)).

We need not determine whether Brodie's seizure meets the "where" requirement because we find that it doesn't satisfy the "when." While the record does not indicate how long the officers expected to wait, it makes clear that they observed Brodie merely in anticipation of the search. They parked around the corner from the house to wait for the homicide detectives' arrival and pulled around near the target residence only in order to talk to Brodie. The officers did not encounter Brodie "when" a search was underway, even if we imagine a search to be in progress from the minute officers start to advance from car or sidewalk to front door. Cf. *Summers*, 452 U.S. at 693.

We note that because this conclusion hews closely to *Bailey*, it doesn't wholly address the issue of risk to officers in the course of a search. *Bailey* expressly noted its limitations on that point. It observed, for example, that the risk that someone who left a dwelling about to be searched might return, during the search execution proper, exists even if the person left the place "five minutes or five hours earlier." 133 S. Ct. at 1039. And it noted the chance that a departing occupant might notice the surveillance and "alert others still inside the residence," but then discarded that risk as "an insufficient safety rationale to justify expanding the existing categorical authority to detain so that it extends beyond the immediate vicinity of the premises to be searched." *Id*. at 1039-40. In other words, the Court was emphatic that *Summers-Bailey* was not to be subject to some sort of risk creep. To the extent that the exception leaves risks beyond its scope unaddressed, officers must depend either on other doctrines (such as *Terry*) or on taking additional precautions such as "erecting barricades" to fend off a departing occupant who may return. *Id*. at 1039.

Finding *Summers-Bailey* inapplicable, and noting that the government does not attempt to justify this as a *Terry* stop, we

conclude that Brodie's seizure was unreasonable, in violation of the Fourth Amendment.


* * *


An illegal search or seizure calls for suppression of evidence only if  the seizure is a but-for cause of the discovery of the evidence (a necessary condition), and if the causal chain has not become "too attenuated to justify exclusion," *Hudson v. Michigan*, 547 U.S. 586, 592 (2006), or, to put the same point with another metaphor, if circumstances have not "purged [the evidence] of the primary taint," *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (internal quotation marks omitted).

The presence of but-for causation is quite plain.  The government does not contend, and no evidence suggests, that anything like the scene of flight and weapon-discarding would have occurred if the officers had stayed in their car to wait for back-up as originally intended.  In fact, though Brodie looked "hinked up" when he first saw the officers, he continued to walk *toward* the police car, making no effort to flee or to shed his concealed weapons.  This is quite unlike cases such as *United States v. McClendon*, 713 F.3d 1211, 1217-18 (9th Cir. 2013), where the court found ample evidence that the fruitful search would have occurred even in the absence of the antecedent illegal search.

In resolving whether the causal chain has become "too attenuated," the Court has identified three factors of special relevance:  (1) the amount of time between the illegality and the discovery of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the illegal conduct.  *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).  For

this inquiry, the government bears the burden of demonstrating admissibility. *Id*. at 604.

The first and third factors cancel out, at most. The evidence was discovered mere seconds after the illegal seizure, so time obviously did not purge the taint. And while the police conduct may not have been especially flagrant, neither was it a case of an innocent mistake, such that exclusion would not materially advance the deterrent purpose of the rule, as in *Herring v. United States*, 555 U.S. 135, 144-46 (2009), where officers reasonably but mistakenly believed there was an outstanding arrest warrant. Thus, the outcome of the attenuation analysis turns on assessment of the intervening circumstances.

The government contends that Brodie's flight and abandonment of evidence were intervening circumstances that purged the taint. As those events flowed directly from the seizure, however, it is hard to spot any attenuation. See *United States v. Wilson*, 953 F.2d 116, 127 (4th Cir. 1991). There are indeed a number of cases where courts have found attenuation in a defendant's response to illegal police conduct. But in those decisions the court found that the defendant had committed a new crime, e.g., *United States v. Bailey*, 691 F.2d 1009, 1015-18 (11th Cir. 1982), or had at least fled in a manner posing serious risks to the public safety—typically a vehicular flight leading to a high-speed car chase, e.g., *United States v. Boone*, 62 F.3d 323, 324 (10th Cir. 1995).

*Bailey* contains perhaps the most analysis. The defendant engaged in forcible resistance to the seizing officers, which the court regarded as a violation of 18 U.S.C. § 111, making it a crime to forcibly resist officers of the United States going about the execution of their duties. The conclusion depended on the court's reading § 111 as withholding any defense based on the illegality of the officers' prior conduct. *Bailey*, 691

F.2d at 1018. Plainly we need not get into the soundness of these cases: Brodie fled on foot, and the manner of his flight in itself posed no incremental threat to anyone.

As to Brodie's discard of his weapons, the *Bailey* court's treatment of a similar case is persuasive. The court noted that a defendant's tossing marijuana out a car window during an illegal stop did not constitute a new, attenuating crime: the tossing "only revealed [the] extant crime and did not itself constitute a crime." *Id.* at 1017. So here.

In short, the government has not met its burden to show attenuation between the illegal seizure and the discovery of the guns and drugs.

\* \* \*

The judgment of conviction is reversed because of error in denial of the motion to suppress. We remand the case to the district court for further proceedings consistent with this opinion.

*So ordered.*