15-4014-cr
United States v. Huertas

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: December 15, 2016     Decided: July 24, 2017)

Docket No. 15-4014

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

Appellee,

- v. -

BRANDEN HUERTAS,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - -x

Before:          WINTER, JACOBS, and POOLER, Circuit Judges.

Branden Huertas appeals the order of the United States District Court for the District of Connecticut (Arterton, J.), denying his motion to suppress physical evidence. Huertas contends that he was seized (after a show of police authority) when he stood still to answer questions and ran when the police opened the door of the police-car. Affirmed.

Judge Pooler dissents in a separate opinion.

JENNIFER MELLON, for Terence S. Ward, Federal Defender, District of Connecticut, New Haven, CT, <u>for Defendant-Appellant</u>.

ALINA P. REYNOLDS (with Marc H. Silverman, on the brief), for Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, CT, <u>for Appellee</u>.

JACOBS, <u>Circuit Judge</u>:

Defendant Branden Huertas appeals the denial of his motion to suppress a firearm that, he contends, was found as a result of an illegal seizure. After the United States District Court for the District of Connecticut (Arterton, <u>J.</u>) denied his motion to suppress, Huertas conditionally pleaded guilty to being a felon in possession of a weapon. He contends he was seized when a police officer in a squad car, who had been alerted to a man lurking with a gun, shined a spotlight on Huertas and asked questions to which Huertas responded. We conclude that because Huertas never submitted to police authority, he was never seized. We therefore affirm.

**I**

In May 2014, a woman pulled her car alongside a police cruiser in Bridgeport, Connecticut to ask about the process for amending a police report.[1]

---

[1] The following facts are drawn from Officer Lattanzio's testimony at the suppression hearing. Huertas submitted an affidavit giving his description of his interaction with Officer Lattanzio, but both parties agree that the district court's order denying the suppression motion was based on Officer Lattanzio's testimony. Although Huertas alleges that there are "discrepancies" between Officer Lattanzio's testimony, his earlier police report, and Huertas's affidavit,

After Officer Thomas Lattanzio responded, the woman drove away for a few feet, then reversed toward the police car and told Officer Lattanzio that a man named Branden was nearby with a gun.  She pointed down the street, but Officer Lattanzio did not see anyone.  Without giving her name, the woman drove away.

Officer Lattanzio then drove in the direction the woman pointed, searching for an armed man.  He soon saw Huertas standing on a street corner holding a black bag.  Officer Lattanzio drove toward Huertas, going the wrong way on the one-way street.  As the cruiser approached, Officer Lattanzio turned on the cruiser's spotlight and illuminated Huertas.  Through the car's window, Officer Lattanzio asked Huertas a few questions, such as "What's going on?" and "What happened with the girl?"  During Officer Lattanzio's approach and questioning, Huertas stayed in a fixed position and began answering the questions.  The encounter lasted between thirty seconds and one minute.   As soon as Officer Lattanzio got out of the cruiser, Huertas ran away.

Other police officers later found and arrested Huertas.  A search of Huertas's route turned up a bag similar to the one Huertas had been holding.  The bag contained a firearm.

**II**

The only question on appeal is whether Huertas was seized.  Whether a seizure would have been in violation of the Fourth Amendment is an issue not reached by the district court, and is not before us.  Because Huertas is appealing a suppression ruling, "we review factual findings for clear error and we review questions of law de novo."  United States v. Faux, 828 F.3d 130, 134 (2d Cir. 2016).

"A seizure . . . requires '*either* physical force . . . *or*, where that is absent, *submission* to the assertion of [police] authority.'" United States v. Swindle, 407 F.3d 562, 572 (2d Cir. 2005) (emphasis in original) (quoting California v. Hodari

Huertas does not contend that any of the facts relied upon by the district court were clearly erroneous, which is the relevant standard of review.  United States v. Faux, 828 F.3d 130, 134 (2d Cir. 2016).

D., 499 U.S. 621, 626 (1991)).  It is undisputed that Officer Lattanzio used no physical force.  Therefore, Huertas was seized only if he (1) "submitted" (2) to an "assertion of authority."  We conclude that Huertas never "submitted" to Officer Lattanzio and was therefore never "seized" within the meaning of the Fourth Amendment.  In light of this disposition, we need not consider whether the spotlighting of Huertas by a police car going the wrong way down a dark street constituted an "assertion of authority."

"Whether conduct constitutes submission to police authority will depend . . . on 'the totality of the circumstances--the whole picture.'" United States v. Baldwin, 496 F.3d 215, 219 (2d Cir. 2007) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).  Of particular relevance here, conduct that "amount[s] to evasion of police authority" is "not submission."  Id. at 219.

### III

Huertas argues that he "submitted" to police authority by standing still as Officer Lattanzio's police cruiser approached and by answering Officer Lattanzio's questions.[2]  However, we conclude that Huertas's behavior was akin to the evasive actions in Baldwin, which did not constitute submission.  The defendant in Baldwin pulled his car to the side of the road in response to a police cruiser's siren and flashing lights.  496 F.3d at 217.  Both police officers walked toward Baldwin's car and ordered Baldwin to show his hands.  Id.  When he refused and just stared at them, the officers drew their weapons and continued to

---

[2]  The dissent states that the district court, having accepted Huertas's version of events, assumed that Huertas  stopped walking after Officer Lattanzio approached, in order to answer the police officer's questions.  See United States v. Huertas, No. 3:14cr141(JBA), 2015 WL 1517403, at *2 (D. Conn. Apr. 1, 2015).  True, the district court stated that its decision would be unchanged "even if" Huertas had initially been walking.  Id.  But Huertas concedes that the district court credited Officer Lattanzio's testimony, which was clear that Huertas was standing throughout the encounter.  Even Huertas's brief concedes that he "remain[ed] in a 'fixed' position."  Appellant's Opening Br. at 17.  Consequently, we need not join issue with the dissent on this point.

4

approach.  Id.  As they neared, Baldwin sped off.  Id.  When Baldwin was apprehended, weapons and drug paraphernalia were found in his car.  Id.

The trial court denied Baldwin's motion to suppress the physical evidence on the ground that it was discovered after an illegal seizure.  Id. at 217-18.  We affirmed on the ground that the temporary stop did not constitute submission to police authority.  Id. at 218-19.  Rather, "Baldwin's conduct, all circumstances considered, amounted to *evasion* of police authority, not submission."  Id. at 219 (emphasis added).

All circumstances considered, Huertas's actions were likewise evasive, and maximized his chance of avoiding arrest.  If Huertas had run as soon as he was illuminated by Officer Lattanzio's spotlight, he could expect Officer Lattanzio to give chase.  By remaining still and answering questions, Huertas had a chance to quiet suspicion and hope that Officer Lattanzio would drive away after being satisfied with answers to his questions.  But as soon as Huertas saw Officer Lattanzio getting out of his car, Huertas ran.  Among the significant circumstances are the brevity of the interaction and the fact that Officer Lattanzio was never within reach of Huertas and able to physically restrain him.  As in Baldwin, the totality of the circumstances indicate that the defendant was evading police authority, not submitting to it.  Huertas was never seized, and the evidence was admissible.

Huertas fails to distinguish Baldwin.  First, Huertas argues that Baldwin "gained an advantage by tricking the chasing officers into stopping," whereas Huertas gained no advantage from his actions.  Appellant's Opening Br. at 19. This is incorrect.  By answering Officer Lattanzio's questions and standing still, Huertas could allay Officer Lattanzio's suspicion, and induce him to drive away. Second, Huertas argues that Baldwin "lacked the direct interaction that occurred in this case."  Id.  But Huertas does not explain how the allegedly more "direct" interaction in this case makes his conduct any less evasive.

**IV**

Huertas relies in part on Brendlin v. California, 551 U.S. 249 (2007), which considered whether a passenger in a vehicle may be "submit[ting]" to police

5

authority when the driver pulls the car to the side of the road in response to flashing police lights:

> [W]hat may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority *by not getting up to run away*. . . . [The defendant] had no effective way to signal submission while the car was still moving on the roadway, but *once it came to a stop he could, and apparently did, submit by staying inside*.

551 U.S. at 262 (italics added). Huertas argues by analogy that he passively remained in place after a show of authority while the police car approached him. However, the italicized language suggests that what mattered is that Brendlin let pass his opportunity to flee. That is the opposite of what Huertas did: he fled as soon as Officer Lattanzio opened his door and signaled that he was not going away.

Huertas also relies on two out-of-circuit cases. In United States v. Brodie, the defendant initially complied with an order to place his hands on a police cruiser, but then ran when he noticed that the police officer was distracted. 742 F.3d 1058, 1061 (D.C. Cir. 2014). The D.C. Circuit held that Brodie had submitted to police authority, observing that nothing "in the record suggest[s] that Brodie had some ulterior purpose in putting his hands on the car, such as a belief that doing so would facilitate escape." Id. And indeed, he complied with an order that considerably impaired his chance of evasion. Not so for Huertas.

Huertas also cites United States v. Camacho, 661 F.3d 718 (1st Cir. 2011), in which the police drove their cruiser in front of two men, got out, and immediately began to ask questions. Id. at 722. The First Circuit held that the defendant had "submitted" as soon as he responded to the police officer's questions, "at which point his liberty had been restrained and he was seized under the Fourth Amendment." Id. at 726 (alterations and quotation marks omitted). We doubt that responding to a policeman's questions, without more, amounts to submission for purposes of the Fourth Amendment; at least one other Court of Appeals shares our skepticism. See United States v. Valentine, 232 F.3d

6

350, 359 (3d Cir. 2000) ("Even if Valentine paused for a few moments and gave his name, he did not submit in any realistic sense . . . ."). In any event, we are not bound by the First Circuit's holding, and we conclude that our own precedent of Baldwin controls this case.[3]

## V

The dissent argues that the majority widens or transcends the principle of Baldwin. However, Baldwin did not establish a bright-line test for what constitutes seizure. Baldwin, like every other case concerning Fourth Amendment seizures, looked at all the factual circumstances to determine whether there was "submission" to the police before concluding that the defendant was trying to evade rather than submit. Baldwin, 496 F.3d at 219. So too here.

The dissent discards reliance on the totality of circumstances, and proposes a per se rule: when, in response to a question by a police officer, a suspect does "nearly anything" more than a brief pause, the suspect has "submitted" to police authority within the meaning of the Fourth Amendment. Dissent at 4. Under the dissent's approach, a suspect would be deemed to have submitted to police

---

[3] After oral argument in this case, the Tenth Circuit decided United States v. Hernandez, 847 F.3d 1257 (10th Cir. 2017), a case that Huertas contends supports his position that he was "seized" when he stayed put to answer Officer Lattanzio's questions. The Tenth Circuit ruled that Hernandez had been seized when he stopped walking and answered questions posed by police. Id. at 1264-65. But the Tenth Circuit considered many factors, including the fact that Hernandez complied with an officer's explicit request that he stop walking and talk to him. Id. at 1261, 1264-65. Hernandez is easily distinguishable, not least because Hernandez stopped walking only after he was told to stop walking by police that had been following him in an intimidating manner. The dissent also cites an earlier Tenth Circuit decision (not cited in Huertas's brief) that found that a defendant had been "seized" in circumstances similar to Hernandez. See United States v. Morgan, 935 F.2d 1561 (10th Cir. 1991). Our circuit has explicitly rejected the reasoning in Morgan. See Baldwin, 496 F.3d at 218-19.

authority by answering a police officer's questions from the other side of a high fence, even if the suspect ran as soon as the cop moved to scale it.

As it happens, this case is a close analogue to Baldwin. In Baldwin, the defendant was pulled over by a police cruiser, and took off when both officers in the cruiser got out and were approaching on foot. 496 F.3d at 217. In this case, the defendant stayed put until he saw the sole officer in the cruiser start to open the door. The dissent seems to think that the Baldwin precedent depends on a plan or design to flee that is formed before the defendant feints at submission. But suspects often act on opportunity and impulse rather than calculation. In any event, Baldwin could not have known that *both* officers would get out of the cruiser to approach, and thereby offer the opportunity to step on the gas without immediate pursuit.

This case is factually close to Baldwin, and the principle of Baldwin is not fact-limited. Subject to the specific circumstances of each case, submission is questionable when a suspect remains out of reach and takes flight when police move to lay hands on him.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

8

POOLER, *Circuit Judge*:

I respectfully dissent because I disagree with the majority on two points: first, its treatment of the factual findings made by the district court and, second, its treatment of the circuit split regarding whether a suspect must do more than merely pause briefly in order to be seized within the meaning of the Fourth Amendment.

## I

First, I do not agree that the facts of the case before us today are comparable to the situation in *United States v. Baldwin*, 496 F.3d 215 (2d. Cir. 2007).

*Baldwin* stands clearly for one legal proposition and arguably for a second legal proposition. First, the opinion states that "a suspect must do more than halt temporarily" in order "to comply with an order to stop[ ]and thus to become seized." *Id.* at 218. Second, *Baldwin* suggests, in a single sentence, that "evasion of police authority," which I take to mean conduct that is part of a suspect's plan to flee from custody, will not constitute submission. *Id.* at 219.

The facts found by the district court do not support a decision under either of these rules. Huertas did not simply "halt momentarily" in this case, but instead stopped and answered some of the officer's questions. *See United States v. Huertas*, No. 3:14cr141, 2015 WL 1517403, at *1. The majority pins a great deal on the district court's statement that Huertas "remained still" when the officer approached, *United States v. Huertas*, No. 3:14-cr-141, 2015 WL 1517403, at *1, and that Huertas's brief states that he remained in a "'fixed' position" through the encounter. Appellant's Opening Br. at 17. The majority takes this to mean Huertas did not halt after having been walking previously. I doubt it matters, for purposes of the Fourth Amendment, whether someone had previously been walking and then stopped, or instead had previously been standing still and continued to do so while engaging with an officer. I doubt even more, however, that the district court crisply distinguished between these two possibilities, given that the court elsewhere referred to the incident as a "stop," 2015 WL 1517403, at *3 n.1, applied a rule dealing with cases where suspects "halt temporarily," *id.* at

1

*2, and, as the majority notes, accepted Huertas's argument that he "briefly stopped walking before he ran," *id.* In view of both Huertas's having stopped, and the fact that he answered the officer's questions, I would hold that the limited "momentary halt" rule in *Baldwin* simply does not cover the situation here.

Moreover, to the extent that *Baldwin* contains an additional "anti-evasion" principle, the principle seems to be limited to situations where, as in *Baldwin*, an entire course of conduct is undertaken in an effort to flee from the police. In *Baldwin*, the suspect stopped his car in order to lure officers out of their own vehicles, thus giving himself an advantage in the ensuing car chase. *Baldwin*, 496 F.3d at 217. No other explanation existed for the suspect's conduct, since he never spoke to the officers or otherwise engaged with them. In this case, on the other hand, the district court made no factual finding that Huertas stopped and answered questions as part of a plan to flee from the police. *Huertas*, 2015 WL 1517403, at *1-*2. To the contrary, the district court accepted Huertas's version of events for purposes of resolving the "submission" dispute, and Huertas's version of events involved a genuine submission to the officer's authority, followed by a change of heart and a decision to flee. *Id.* at *2 ("According to Mr. Huertas . . . he submitted to Officer Lattanzio's authority by pausing before running and by beginning to answer the officer's questions. However, even if Mr. Huertas briefly stopped walking before he ran as he contends, given the totality of circumstances here, that brief stop and verbal exchange did not constitute 'submission[.]'").

An important distinction exists between initial, earnest submission followed by later flight, as opposed to an entire course of conduct undertaken to ensure a getaway. *See, e.g.*, *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014) ("Later acts of noncompliance do not negate a defendant's initial submission, so long as it was authentic."); *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) ("Under some circumstances[,] we have held that a defendant was seized despite his subsequent flight.").

The majority attempts to establish Huertas's "evasion" in two ways. First, it suggests that Huertas did indeed stop in order to improve his chances of getting away. Slip Op. at 4-5. Nothing in the district court's factual findings, however, supports this view. Any statement that Huertas engaged with the

2

officer in order to improve his chance of escape would require us to find new facts about his mental state—a type of fact-finding that appellate courts such as this one are ill-situated to conduct.

Second, the majority extends the definition of "evasion" well beyond activity intended to slow down pursuing officers. The majority states that Huertas's conduct was undertaken to "quiet suspicion and hope that Officer Lattanzio would drive away after being satisfied with answers to his questions," and that Huertas thereby intended to "evade" the police. Slip Op. at 5. The majority thus adopts the view that answering questions to clear one's name counts as "evasion" just as much as does pretending to submit so that officers put themselves in a worse position for an impending chase.

The consequences of eliding this distinction are far-reaching. Suppose, for example, that a suspect speaks with the police not for one or two minutes, but for an hour or two, because he thinks he can talk his way out of going to jail. Would we say he had not submitted, since his only hope was that the interview would "quiet suspicion" and that the officer would let him go "after being satisfied with answers to his questions"? I am comfortable asserting that the vast majority of criminal suspects engage with the police *only* when they think they will avoid incarceration by doing so. Under that assumption, the majority's position suggests that stopping to speak with the police, even at length, is unlikely to constitute a seizure because it instead will constitute evasion.

Accordingly, I cannot agree that Huertas's conduct falls within *Baldwin*'s "momentary halting" rule. Moreover, the district court did not find that Huertas's entire course of conduct was part of a plan to flee the police, and thus this case does not fit within *Baldwin*'s anti-evasion rule. To the extent that the majority's position would extend *Baldwin*'s anti-evasion rule to cover any action taken by a suspect to "quiet suspicion" in the hope that an officer "would drive away after being satisfied," it sweeps far too broadly.

## II

Second, the majority embraces the wrong side of a deepening split between the circuits regarding whether a suspect must do more than merely

3

pause briefly in order to be seized within the meaning of the Fourth Amendment.

The emergent view in the Courts of Appeals, although admittedly uneven within the circuits, is that when a suspect does nearly anything *more* than pausing briefly, including any significant verbal engagement with the officer, that action is strong evidence of submission.[1] *See United States v. Camacho*, 661 F.3d 718, 726 (1st Cir. 2011) (holding that suspect may "submit[] to [the officer's] show of authority by responding to his questions"); *compare Brodie*, 742 F.3d at 1061 (holding that suspect's "action—putting his hands on the car when told to do so by the police—[constituted] full compliance with the officer's request," and that the suspect was thus seized by police despite his later attempt to flee), *and United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994) (holding that hesitation and eye contact, without more, did not constitute submission), *and United States v. Morgan*, 936 F.2d 1561, 1565, 1566-67 (10th Cir. 1991) (holding that suspect submitted when officer told him to "hold up" and the suspect replied "What do you want?" before fleeing), *with Valentine*, 232 F.3d at 359 (holding that "[e]ven if [suspect] paused for a few moments and gave his name, he did not submit in any realistic sense" and thus there was no Fourth Amendment seizure).

Actions more substantial than momentary hesitation, including answering questions, should be considered strong signs of submission. First, courts have recognized that almost any affirmative *physical* actions suggesting engagement with the officer manifest an intention to submit to authority. *See Brodie*, 742 F.3d

---

[1] Acknowledging that consensus reveals certain guideposts of submission, including verbal engagement with an officer, is consistent with the "totality of the circumstances" standard governing whether a suspect has submitted. Such guideposts, which are sound generalizations applicable in the majority of cases, appear in other areas governed by totality-of-the-circumstances tests. *See, e.g.*, *Brower v. Cty. of Inyo*, 489 U.S. 593, 598-99 (1989) (noting that the use of a roadblock generally establishes seizure); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976) (noting that vehicle "checkpoint stops are 'seizures' within the meaning of the Fourth Amendment"). In an unusual case—for example, where a suspect speaks with an officer over a physical barrier between them—the generalization that talking shows submission might well be overcome.

at 1061. It is not evident why there should be a distinction between affirmative physical actions and affirmative non-physical ones, such as answering questions, if they manifest the same intention.

Second, the principle that seizure requires submission originated only recently in *California v. Hodari D.*, 499 U.S. 621 (1991), and must be limited in reach so that it does not eviscerate Fourth Amendment jurisprudence. *Hodari* dealt with a group of men who immediately took flight upon seeing police officers, and the Supreme Court held that they were not "seized" when they ran away. *Id.* at 622-23, 629. That reasoning is workable as far as it goes, but it cannot go very far. For as Justice Stevens noted in dissent, the Supreme Court has in the past fifty years taken an expansive view of what constitutes a "seizure," *id.* at 632, and has written, for example, that a suspect "may not be detained *even momentarily* without reasonable, objective grounds for doing so," *id.* at 640 (emphasis in original). As even "momentar[y] detention" may constitute a seizure, we must be careful not to remove constitutional protections surrounding brief seizures even where suspects later flee.

The rules surrounding police investigations have become a veritable minefield for the unwary. The majority opinion further complicates and impairs the constitutional protections afforded to persons facing police questioning, and will increase uncertainty about protections applicable during the course of investigations. In so doing, the majority joins the wrong side of a deepening split between the circuits over this important issue.

Accordingly, I respectfully dissent.