United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 22-3089**

**September Term, 2023**

FILED ON: MARCH 29, 2024

UNITED STATES OF AMERICA,
      APPELLEE

v.

ANTOWAN HAGAN,
      APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00187)

Before: SRINIVASAN, *Chief Judge*, KATSAS and CHILDS, *Circuit Judges*.

### JUDGMENT

This appeal was considered on the briefs and the district-court record. The Court has fully considered the issues and determined that a published opinion is unwarranted. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

**ORDERED** that the judgment of the district court be **AFFIRMED**.

I

On February 27, 2021, officers wearing police vests and patrolling in an unmarked car saw a group of individuals possibly gambling. As the officers exited the car, someone yelled, "Feds, feds." S.A. 5. Antowan Hagan was in the group but started walking away.

Officer Markell Jones walked after Hagan and in a conversational tone said: "Hey, bro. Hey, Bro, chill out, chill out, chill out, chill out, chill out." S.A. 6. Hagan continued to walk away and then started to run. A second officer, approaching from the other direction, saw Hagan grabbing his waist or waistband, as though he had a gun. Hagan ran around some parked cars and was apprehended. A third officer then yelled, "He threw it underneath. I saw him throw it." *Id.* at 7–8. Under one of the cars, the officers found a gun that was later determined to have Hagan's DNA on it.

Hagan was indicted for unlawfully possessing a firearm as a convicted felon. He moved to suppress the gun on the theory that he had been illegally seized when Officer Jones said to "chill out." Denying the motion, the district court concluded that Hagan had not been seized before he fled and discarded the weapon.

At trial, Special Agent Nelson Rhone testified about executing a search warrant for Hagan's DNA. At one point, Rhone explained that he was assigned to "go to the jail" and that he executed the warrant "at the jail." App. 387. Hagan's counsel did not object.

FBI analyst Mallory Gage testified about comparing Hagan's DNA to the DNA on the gun. She found on the gun a mixture of DNA from three males. She said it was 9.4 million times more likely than not that one of them was Hagan. Gage then testified that the magazine of the gun contained a mixture of DNA from four individuals, and it was 3.5 million times more likely than not that one of those individuals was Hagan. On cross-examination, Hagan's attorney elicited a concession that one can leave DNA on an item by merely touching the hand of another person who then touches the item.

A jury found Hagan guilty, and the district court sentenced him to 28 months of imprisonment and 36 months of supervised release.

Nearly two months after the verdict, Hagan moved, *pro se*, for a new trial due to ineffective assistance of counsel. According to Hagan, his counsel failed to cross-examine Gage adequately and to present an independent DNA expert. The district court appointed new counsel for Hagan. The government argued that the new-trial motion missed the governing 14-day deadline and failed to show ineffectiveness. Hagan's new counsel countered that Hagan's "lack of legal knowledge" created excusable neglect sufficient to excuse missing the deadline. App. 659.

The district court denied Hagan's motion on two alternative grounds. First, the court held that there was no excusable neglect to justify filing the new-trial motion five weeks too late. Even granting Hagan special solicitude for proceeding *pro se*, the court found no justification for taking seven weeks to file a two-page motion based on facts already known to him. Second, on the merits, the court explained that Hagan offered little detail about what points an independent DNA expert might have established and that Hagan made no argument as to prejudice. The court ended by saying that Hagan's trial counsel had "provided zealous, competent advocacy" and that there was overwhelming evidence of Hagan's guilt beyond the DNA evidence. *See* App. 673–74.

II

Hagan contends that (1) his gun should have been excluded at trial as the product of an unlawful seizure; (2) the district court plainly erred in failing to grant a mistrial when Special Agent Rhone revealed that Hagan was in jail when his DNA was collected; and (3) his counsel was ineffective in countering the DNA evidence against him. None of these arguments has merit.

A

The district court correctly denied Hagan's motion to suppress. Absent any disputed factual findings, we review *de novo* "the legal question whether and when a seizure occurred." *United States v. Mabry*, 997 F.3d 1239, 1243 (D.C. Cir. 2021) (cleaned up).

"For purposes of the Fourth Amendment, a seizure occurs … when a person submits to an officer's show of authority." *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014) (cleaned up). A "show of authority" must communicate to a reasonable person that he is "not free to leave." *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020) (cleaned up). Officer Jones never made such a show of authority; he simply told Hagan, while in uniform and in a "conversational tone," to "chill out." S.A. 6, 16. Jones neither told Hagan to stop nor asked him any questions. An approach by a uniformed police officer is not a seizure. *See United States v. Goddard*, 491 F.3d 457, 461 (D.C. Cir. 2007). Nor is it a seizure when an officer "approaches an individual and asks a few questions." *See Florida v. Bostick*, 501 U.S. 429, 434 (1991).

Moreover, even if there were a show of authority, Hagan did not submit to it. Hagan suggests that he submitted by continuing to walk slowly for a few seconds after Jones asked him to "chill out." As an initial matter, the district court concluded that Jones's body camera gave "absolutely zero indication … of submission." S.A. 16. And in any event, a person is not seized by submitting to a request to slow down. We recently noted the absence of "any circuit case in which a suspect submitted to a show of authority while walking *away* from the police." *United States v. Veney*, 45 F.4th 403, 406 (D.C. Cir. 2022).

B

The district court did not plainly err in failing to declare a mistrial when Special Agent Rhone revealed that Hagan was in jail when his DNA was sampled. Absent any contemporaneous objection, we review this decision for plain error, which requires an error that is plain, affects the defendant's substantial rights, and "seriously affects the fairness, integrity or public reputation of judicial proceedings." *In re Sealed Case*, 573 F.3d 844, 847–48 (D.C. Cir. 2009) (cleaned up).

Hagan would likely fail to satisfy any of these requirements, but it suffices that any error was not plain. In some instances, a "constant reminder" that the defendant is in jail could be prejudicial because, for example, it could make the jury hesitant to be responsible for releasing him. *See Estelle v. Williams*, 425 U.S. 501, 504–05 (1976). But in other instances, "no prejudice can result" because, for example, the defendant is charged with committing a crime while in jail on a separate conviction. *See id.* at 507 (cleaned up). Here, the revelation of Hagan's jail status involved a time before the trial, was fleeting rather than continuous, and was less significant because the jury knew that Hagan had been charged with a crime predicated on a past felony conviction. Under these circumstances, it was hardly plain that the district court even had to strike the testimony *sua sponte*, much less that the court had to *sua sponte* declare a mistrial.

C

Finally, the district court did not err in denying the motion for new trial. Federal Rule of Criminal Procedure 33(b)(2), which imposes a 14-day deadline for new-trial motions not

predicated on newly discovered evidence, is an "inflexible" claims-processing rule. *See Eberhart v. United States*, 546 U.S. 12, 16, 19 (2005). Its only exception is for "excusable neglect." Fed R. Crim. P. 45(b)(1)(B). We review an excusable-neglect determination for abuse of discretion. *See*, *e.g., Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 n.5 (D.C. Cir. 2001). Here, there was no such abuse. The court gave Hagan special leeway because of his *pro se* status, but it nonetheless found that the five-week delay was substantial and unexplained. And replacement counsel offered no reason for delay beyond Hagan's *pro se* status at the time of the motion.

The district court was also correct to deny the motion on the merits. We review ineffectiveness determinations *de novo*. *See United States v. Abney*, 812 F.3d 1079, 1087 (D.C. Cir. 2016). To prove ineffectiveness, a criminal defendant must show that his attorney's performance was both deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Deficiency requires attorney conduct that is "unreasonable" under prevailing professional norms. *Id.* at 688–89. Prejudice requires a "reasonable probability" that the defendant would have been acquitted but for the deficient performance. *Id.* at 694.

Hagan cannot satisfy either prong of this test. He fails to offer any reason why it was unreasonable for his trial counsel neither to challenge the procedure that Gage used nor to call a competing DNA expert. Faced with strong evidence that Hagan's DNA was on the gun, his attorney made a reasonable decision not to question that evidence and instead to argue that Hagan's DNA could have gotten there through the touch of a friend. As for prejudice, the non-DNA evidence of Hagan's guilt was overwhelming, including eyewitness testimony that Hagan ran away while grabbing his waistband and threw the gun under the car.

Hagan falls back to an argument that the district court should have held a hearing on ineffectiveness. But neither Hagan nor his replacement counsel requested a hearing. And absent any colorable claim of ineffective assistance, the district court permissibly declined to pursue the matter further. *See*, *e.g.*, *United States v. Sitzmann*, 893 F.3d 811, 831–33 (D.C. Cir. 2018) (per curiam); *United States v. Weaver*, 234 F.3d 42, 47 (D.C. Cir. 2000); *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992).

III

For these reasons, we affirm the district court's judgment. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

4