Opinion for the Court filed by Circuit Judge SRINIVASAN.
SRINIVASAN, Circuit Judge:
Appellant Will Gross was indicted on one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Gross filed a motion to suppress the firearm, arguing that its discovery on his person was the fruit of an unlawful seizure. The district court denied the motion, reasoning that Gross had not been seized when officers approached him and asked if he was carrying a gun. The case then proceeded to trial, culminating in Gross’s conviction. Gross now appeals the denial of his motion to suppress, arguing that officers subjected him to an unlawful seizure before finding the gun. We conclude that no unlawful seizure occurred, and we therefore affirm.
I.
On the evening of February 4, 2013, four officers of the Washington, D.C. Metropolitan Police Department’s Gun Recovery Unit drove along the 4000 block of 9th Street, S.E. The officers were working on “gun patrol,” which involved “[rjiding through the area looking to see if [they] could recover any guns.” Mot. Hr’g Tr. 40 (June 17, 2013). The officers’ car was unmarked, but each officer wore a tactical vest that said “police” .in large letters on the front and back. Officer Jason Bagshaw drove the vehicle and Officer Jordan Katz rode in the rear driver-side seat. Two other officers — whose conduct is not at issue — sat in the passenger-side seats.
Around 7 p.m., the officers came across appellant Gross on 9th Street as he walked along the sidewalk to the left of the car. When the officers reached the corner of 9th and Bellevue Street, they turned left onto Bellevue. Gross also turned onto Bellevue and continued to travel in the same direction as the officers. Officer Bagshaw slowed the car as it moved next to Gross and shined a flashlight on Gross to get his attention. Officer Bagshaw then called out to Gross from the car, “[H]ey, it is the police, how are you doing? Do you have a gun?” Id. at 10. Gross stopped, but did not answer, and Officer Bagshaw stopped the car to remain parallel with Gross. Bagshaw then asked Gross, “Can I see your waistband?” Id. at 12. Still not speaking, Gross responded by lifting his jacket slightly to show his left side, looking back over his shoulder in the process. Of *786 ficer Bagshaw, apparently satisfied with the interaction, began to roll the car forward.
Officer Katz, however, asked Officer Bagshaw to stop the car. Suspicious of Gross, Officer Katz opened the driver-side rear door and asked, while stepping out of the vehicle, “[H]ey man, can I check you out for a gun?” Id. at 15. As soon as Officer Katz began to exit the car, Gross turned and ran back towards 9th Street. Officer Katz gave chase. He observed Gross patting his right side with his hand as he ran, behavior that Officer Katz later testified “can mean someone is trying to hold a gun in their waistband.” Id. at 15-16. Officer Katz also smelled PCP while pursuing Gross. After a short chase, Officer Katz apprehended Gross. With Gross in handcuffs, Officer Katz performed a frisk and recovered a .40-caliber semiautomatic handgun from underneath Gross’s waistband.
After his indictment, Gross filed a motion to suppress the handgun on the ground that its recovery derived from an unlawful seizure. At the motion hearing, Officer Katz testified about his recollections of the encounter with Gross, describing both his actions and those of Officer Bagshaw. After hearing Officer Katz’s testimony and arguments from both sides, the district court denied Gross’s motion. The court reasoned that no Fourth Amendment seizure occurred until after Gross fled because nothing to that point would have indicated to a reasonable person that he lacked freedom to disregard the officers’ questions and walk away. The court concluded that Gross’s flight, when considered in conjunction with his other behavior, provided the officers with reasonable grounds to detain him and conduct a pat-down frisk for weapons.
After the district court denied his motion to suppress, Gross waived his right to a jury trial and proceeded to a bench trial. The district court found Gross guilty and sentenced him to twenty-one months of imprisonment followed by three years of supervised release. Gross now appeals the district court’s denial of his suppression motion.
II.
Gross argues that the district court erred in denying his motion to suppress the handgun found on his person. According to Gross, he was subjected to an unlawful seizure when Officer Bagshaw asked if he was carrying a gun and would reveal his waistband. The government argues that Gross is barred from raising that seizure argument on appeal because he failed to raise it with adequate specificity in the district court. We decline to resolve whether Gross forfeited his argument. We instead conclude that, even assuming Gross adequately preserved the argument he now presses, his unlawful-seizure argument fails on the merits.
The Fourth Amendment guarantees the “right of the people to be secure in their persons ... against unreasonable searches and seizures.” U.S. Const, amend. IV. The prohibition against unreasonable seizures requires that all seizures, even ones involving “only a brief detention short of traditional arrest,” be founded upon reasonable, objective justification. United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). But not all interactions between police officers and citizens amount to a “seizure” for Fourth Amendment purposes.
A Fourth Amendment seizure occurs only when an officer, “by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” Terry v. Ohio, 392 U.S. 1, 19 n. 16, *787 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Unless “a reasonable person would have believed that he was not free to leave,” no seizure will have taken place. United States v. Maragh, 894 F.2d 415, 418 (D.C.Cir.1990) (quoting Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). That “reasonable person” test asks, “not ... what the defendant himself ... thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s shoes.” United States v. Goddard, 491 F.3d 457, 460 (D.C.Cir.2007) (per curiam).
Gross argues that he was subjected to a Fourth Amendment seizure when Officer Bagshaw, speaking to him from the police car, asked if he was carrying a gun and would expose his waistband. Right out of the gate, Gross’s argument runs into the settled principle that a “seizure does not occur simply because a police officer approaches an individual and asks a few questions.” Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Even when officers “have no basis for suspecting a particular individual, they may generally ask questions of that individual ... as long as the police do not convey a message that compliance with their requests is required.” Id. at 435, 111 S.Ct. 2382. And “[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.” United States v. Drayton, 536 U.S. 194, 205, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).
Gross contends that a reasonable, innocent person nonetheless would have considered his encounter with Officer Bagshaw to be nonconsensual in light of the particular circumstances. Gross emphasizes three factual considerations in support of his argument: (i) there were four officers in the car, each of whom wore a tactical vest; (ii) the officers followed Gross; and (iii) Officer Bagshaw’s questions were accusatory, implying that Gross could not leave until he proved his innocence (i.e., that he did not possess a gun). Because we consider “the totality of the circumstances” in assessing whether there was a seizure, see Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), we examine the particular factual considerations emphasized by Gross in the context of the overall effect of the encounter. We conclude that the circumstances are materially indistinguishable from those in cases in which our court, or the Supreme Court, has determined that no seizure took place. Those decisions compel the same outcome here.
Gross initially points to the fact that four officers were present in the car and that the officers wore tactical vests marked “police.” We confronted comparable circumstances in United States v. Goddard, 491 F.3d 457. There, four officers exited their police car and approached the defendants while wearing badges and jackets marked with a police logo. See id. at 459. We concluded that those circumstances did not amount to a seizure. As we explained, “the presence of multiple officers” wearing “[police] gear, including guns and handcuffs,” does not “automatically mean that a stop has occurred.” Id. at 461. The circumstances of this case are, if anything, less suggestive of a seizure than those in Goddard. Here, all four officers remained in a car separated from Gross by one lane of traffic during Officer Bagshaw’s questioning. And while the officers carried weapons, there is no indication that the weapons were visible to Gross from the sidewalk.
The officers’ “following” of Gross likewise did not convert the encounter into a *788 seizure. Testimony from the motion hearing showed that the officers merely turned in the same direction as Gross and then slowed their car for a few seconds as it passed next to him across one lane of traffic. In Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565, the Supreme Court concluded that no seizure had occurred when four officers in a police car “accelerated to catch up with a running pedestrian and drove parallel to him for a short while.” Goddard, 491 F.3d at 461 (describing Chestemut). Although the “presence of a police car might be ‘somewhat intimidating,’ ” id. at 461 (quoting Chesternut, 486 U.S. at 575, 108 S.Ct. 1975), the act of approaching a person in a police car “does not constitute a seizure where the officers [do] not use their siren or flashers, [do] not command the [person] to stop, [do] not display their weapons, and [do] not drive aggressively to block or control the [person’s] movement,” id. Just as in Chestemut and Goddard, the officers did none of that in this case.
With regard to the questions posed by Officer Bagshaw, the “nature of a police officer’s question[s]” can bear on whether a person has been seized. Gomez v. Turner, 672 F.2d 134, 146 (D.C.Cir.1982). Questions alone, however, ordinarily do not amount to a “show of authority” sufficient to constitute a seizure. Gross points to cases in which direct accusations of criminal conduct by officers have weighed in favor of finding a seizure. See, e.g., United States v. Tyler, 512 F.3d 405 (7th Cir.2008). But Officer Bagshaw’s questions (“Do you have a gun?”, “Can I see your waistband?”) did not accuse Gross of possessing a gun or committing a crime.
The Supreme Court’s decision in United States v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242, is instructive. The Court held that no seizure had taken place when multiple officers wearing visible badges boarded a bus and asked passengers numerous questions. Id. at 198-99, 122 S.Ct. 2105. Of particular salience, one officer asked if a passenger “had any weapons or drugs in his possession,” and then asked, “Do you mind if I check your person?” Id. at 199, 122 S.Ct. 2105. Officer Bagshaw posed highly similar questions to Gross. Indeed, whereas the officer in Drayton asked if he could perform a search of the passenger’s person, here, Officer Bagshaw merely asked whether Gross himself would reveal his waistband. And while the passengers in Drayton were questioned while inside a bus with an officer positioned near the exit, see id. at 205, 122 S.Ct. 2105, the street encounter in this case posed no physical impediment to Gross’s freedom to walk away.
Reviewing the totality of the circumstances in this case in light of precedents involving comparable interactions, we conclude that Officer Bagshaw’s questioning of Gross did not effect a seizure for purposes of the Fourth Amendment. Moreover, Gross raises no challenge to the district court’s conclusion that the circumstances did not subsequently ripen into a seizure when Officer Katz exited the police car and asked if he could check Gross for a gun. Nor does Gross contest the district court’s determination that, once he attempted to flee in response to that question, the officers had authority to stop him and conduct the frisk that uncovered the handgun on his person. Consequently, there is no ground for disallowing the introduction of the firearm into evidence.
^ * * * * #
For the foregoing reasons, we affirm the district court’s denial of Gross’s motion to suppress.

So ordered.

Concurring opinion filed by Circuit Judge BROWN.