# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-3017**

**September Term, 2020**

FILED ON: NOVEMBER 25, 2020

UNITED STATES OF AMERICA,
> APPELLEE

v.

ASA LEA, ALSO KNOWN AS ASA LORENZO-LAMIYAH LEA,
> APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-00089-1)

Before: ROGERS, PILLARD, and WALKER, *Circuit Judges*.

## J U D G M E N T

In this appeal from a conviction by a jury of unlawful possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), appellant contends that the district court erred in denying his motion to suppress evidence and statements, and in denying his motion for judgment of acquittal and for a new trial based on insufficient evidence. This case was considered on the record from the United States District Court for the District of Columbia, and on the briefs and oral argument of the parties. The Court has afforded the issues full consideration and has determined they do not warrant a published opinion. *See* D.C. Cir. Rule 36(d). For the following reasons, it is

**ORDERED and ADJUDGED** that the judgment of the district court be **AFFIRMED**.

## I.

Lea contends that he was seized in violation of the Fourth Amendment when Metropolitan Transit Police Department Officers Woods and Wooley first approached him because "[a] reasonable person, sitting in a bus shelter, approached by officers, who identified themselves by displaying their police badges and by stating 'police' in a loud clear voice, would believe that he was not free to leave." Appellant's Br. 17. He also contends his statements to the officers should have been suppressed as violative under the Fifth Amendment.

This court reviews *de novo* the district court's legal conclusions on a motion to suppress, including whether a seizure occurred, whether law enforcement had reasonable suspicion or probable cause to effectuate a seizure, and whether an individual was in custody and thus entitled to *Miranda* warnings. *See United States v. Cooper*, 949 F.3d 744, 748 (D.C. Cir. 2020) (Fifth Amendment); *United States v. Castle*, 825 F.3d 625, 632 (D.C. Cir. 2016) (Fourth Amendment). In contrast, the district court's factual findings are reviewed "only for clear error" with "due weight" given to inferences drawn from those facts and the district court's credibility determinations. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *see United States v. Delaney*, 955 F.3d 1077, 1082 (D.C. Cir. 2020). Although the court "may consider both evidence offered at the suppression hearing and the trial," where, as here, the district court made factual findings, our task is to review those factual findings and, "assuming they are not clearly erroneous, determine whether they support the contested seizure." *Castle*, 825 F.3d at 632 (quoting *United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010)).

Applying well-settled Fourth and Fifth Amendment principles, the district court correctly rejected Lea's contentions. Not every citizen-police encounter triggers Fourth Amendment scrutiny. Rather, it is implicated only when an individual has been seized. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). A "seizure occurs 'when physical force is used to restrain movement or when a person submits to an officer's 'show of authority.'" *Delaney*, 955 F.3d at 1081 (quoting *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014)). "Whether police action amounts to a 'show of authority' requires the court to ask whether a 'reasonable person' 'in view of all the circumstances surrounding the incident, . . . would have believed that he was not free to leave.'" *Castle*, 825 F.3d at 632 (quoting *United States v. Wood*, 981 F.2d 536, 539 (D.C. Cir. 1992)). That "reasonable person" is not the defendant, but the average person innocent of any crime. *United States v. Goddard*, 491 F.3d 457, 460 (D.C. Cir. 2007). In performing this totality-of-the-circumstances analysis, courts consider a non-exclusive list of factors, including "whether the suspect was physically intimidated or touched, whether the officer displayed a weapon, wore a uniform, or restricted the defendant's movements, the time and place of the encounter, and whether the officer's use of language or tone of voice indicated that compliance with the officer's request might be compelled." *Delaney*, 955 F.3d at 1081 (quoting *Castle*, 825 F.3d at 632–33). If this assessment indicates that "a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual, and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434 (internal quotation marks and citation omitted).

Lea's initial interaction with Officers Woods and Wooley bears all the hallmarks of a consensual encounter: the officers did not touch Lea or brandish their weapons, which were concealed; Lea's movement was not restricted; the officers wore plain clothes; the encounter took place during the day in a public setting; and the officers spoke to Lea in a clear, calm manner. Viewing the record evidence holistically, and giving due weight to the district court's factual findings, there was no show of authority that would communicate to a reasonable person in Lea's position that he was not free to leave. Because, therefore, Lea was not seized within the meaning of the Fourth Amendment when the officers approached him at the bus shelter and asked what he was smoking, Lea's answer — "Some weed" — supplied the officers with probable cause to

2

believe he was committing a crime in their presence. *See* D.C. Code § 48-911.01. The search that produced the firearm was a lawful search incident to arrest. *See United States v. Bookhardt*, 277 F.3d 558, 564 (D.C. Cir. 2002).

Indeed, Lea's case is virtually indistinguishable from our precedent. *See United States v. Jones*, 973 F.2d 928 (D.C. Cir. 1992), *vacated in part on other grounds*, 997 F.2d 1475 (D.C. Cir. 1993) (en banc); *United States v. Winston*, 892 F.2d 112 (D.C. Cir. 1989). Lea attempts to distinguish these decisions, but his distinctions are not of constitutional dimension. First, Lea contrasts that the police encounters in those cases occurred in bus stations whereas he was confronted by Officers Woods and Wooley while sitting in a small, three-sided bus shelter. The Supreme Court rejected this same argument raised by a bus passenger, explaining that to the extent the individual's freedom of movement is restricted during a police encounter, "this is the natural result of choosing to take the bus; it says nothing about whether the police conduct is coercive." *United States v. Drayton*, 536 U.S. 194, 201–02 (2002). Second, Lea emphasizes that unlike the officers in *Jones* and *Winston*, Officers Woods and Wooley did not seek his permission to ask questions. This contention is also foreclosed by Supreme Court precedent, which "make[s] it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434; *see Drayton*, 536 U.S. at 200; *accord United States v. Gross*, 784 F.3d 784, 788 (D.C. Cir. 2015). Finally, Lea points out that Officers Woods and Wooley initiated the encounter by displaying their badges rather than asking innocuous questions like the officers in *Winston* and *Jones*. That argument fails too, for the "presence of the officer as a figure of governmental authority does not, by itself, constitute the 'show of authority' necessary to make a reasonable person feel unfree to leave." *Goddard*, 491 F.3d at 461 (quoting *Gomez v. Turner*, 672 F.2d 134, 142 (D.C. Cir. 1982)).

In any event, Lea cannot surmount the obstacles presented by *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. Under *Terry*, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). Although the requisite level of suspicion to justify a *Terry* stop is "less demanding than that for probable cause," *id.*, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion," *Terry*, 392 U.S. at 21; *see United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001). The facts available to Officers Woods and Wooley before they approached Lea — the smell of marijuana emanating from Lea's vicinity and Lea sitting alone smoking a hand-rolled cigarette — were sufficient to detain Lea briefly in order to investigate a possible violation of D.C. Code § 48-911.01. *Cf. United States v. Jones*, 584 F.3d 1083, 1086–88 (D.C. Cir. 2009); *United States v. Turner*, 119 F.3d 18, 18–19 (D.C. Cir. 1997). As such, even if the initial encounter between Lea and the officers constituted a seizure, it would be a valid *Terry* stop.

Lea also contends the district court should have suppressed his statements on the grounds that they were solicited in violation of his Fifth Amendment rights under *Miranda v. Arizona*, 384

U.S. 436 (1966). The police "are not required to administer *Miranda* warnings to everyone whom they question," *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977), but rather "only when a suspect interrogated by the police is 'in custody,'" *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). The *Miranda* custody analysis is a two-step inquiry. *See Howes v. Fields*, 565 U.S. 499, 508–09 (2012); *Cooper*, 949 F.3d at 748. As an "initial step," the court must "ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Fields*, 565 U.S. at 509 (quoting *Stansbury v. California*, 511 U.S. 318, 322–23 (1994), then *Thompson*, 516 U.S. at 112). If the individual would have felt free to leave, the inquiry ends; a restraint on freedom of movement is a prerequisite for *Miranda* custody. *See Maryland v. Shatzer*, 559 U.S. 98, 112 (2010). If, however, the individual's freedom of movement was restrained, the court "must then ask 'the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.'" *Cooper*, 949 F.3d at 748 (quoting *Fields*, 565 U.S. at 509). If so, then the individual is "in custody" and therefore "entitled to the full panoply of protections prescribed by *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

Lea's Fifth Amendment argument falters at the starting gate. Although identifying a seizure and custodial interrogation are distinct inquiries, if a citizen-police interaction was consensual because a reasonable person in the individual's position would have felt free to terminate the encounter, then the individual was not in custody for purposes of the Fifth Amendment. *See Shatzer*, 559 U.S. at 112. Thus, because Lea was not seized when he admitted to smoking marijuana, he was not subjected to a custodial interrogation either. That conclusion remains the same even if the initial encounter is viewed as a *Terry* stop, for the Supreme Court has explained that the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Id.* at 113 (internal citation omitted). In sum, because Lea's Fourth and Fifth Amendment contentions are without merit, the district court did not err in denying his motion to suppress.

## II.

Lea's challenge to the district court's denial of his motion for a judgment of acquittal or a new trial is also unpersuasive. Lea contends that the evidence presented at trial was insufficient to support his conviction because the only evidence tending to show he possessed a firearm was the testimony of Officers Woods and Wooley, but their testimony was "inherently incredible." Appellant's Br. 30. In his view, no reasonable juror could credit the officers' testimony because they testified to having seen appellant smoking a marijuana cigarette but never recovered a cigarette from the scene.

A defendant seeking to set aside his conviction on sufficiency-of-the-evidence grounds faces a steep climb. *See United States v. Salamanca*, 990 F.2d 629, 635 (D.C. Cir. 1993). The court will not second-guess the jury's verdict so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bostick*, 791 F.3d

4

127, 137 (D.C. Cir. 2015) (quoting *United States v. Gaskins*, 690 F.3d 569, 576 (D.C. Cir. 2012)). In making that determination, the court reviews the evidence "in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence." *United States v. Vega*, 826 F.3d 514, 522 (D.C. Cir. 2016) (quoting *United States v. Dykes*, 406 F.3d 717, 721 (D.C. Cir. 2005)). And, mindful that the jury is best positioned to evaluate witnesses, *see United States v. Bikundi*, 926 F.3d 761, 788 (D.C. Cir. 2019), the court's analysis "giv[es] full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact," *Vega*, 826 F.3d at 522 (quoting *Dykes*, 406 F.3d at 721). This deferential standard of review "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Lea does not come close to identifying incredible testimony. For starters, Lea identifies no inconsistencies "so glaring that the police officers' testimony 'must be a fabrication.'" *United States v. Streater*, 70 F.3d 1314, 1318 (D.C. Cir. 1995) (quoting *United States v. Gilliard*, 847 F.2d 21, 24 (1st Cir. 1988)). The officers' testimony regarding Lea's marijuana cigarette is entirely consistent. Officer Woods testified that he "smelled the odor of burnt marijuana in the air" and observed Lea "inhaling and exhaling what appeared to be . . . a hand-rolled cigarette." Trial Tr. 204–05 (Nov. 20, 2019). He also recalled Lea placing the cigarette on the bench but acknowledged that it was not found during a sweep of the area after Lea's arrest. Officer Wooley's testimony dovetails with Officer Woods' account, stating that he saw Lea smoking a hand-rolled cigarette shortly after smelling marijuana, *id.* at 252, and that the cigarette "was placed on the bench initially" but was not recovered, *id.* at 266. Nor is the officers' failure to locate the cigarette "highly questionable in light of common experience and knowledge." *Jackson v. United States*, 353 F.2d 862, 867 (D.C. Cir. 1965). Reasons for the cigarette's disappearance are not hard to conjure; for instance, as Officer Woods suggested, it could have blown away. Trial Tr. 224. At that point, the officers had already recovered a gun from Lea's possession, leaving little reason to continue looking for the cigarette. Under the circumstances, Lea has presented no basis for this court to reverse the district court because the officers' testimony about the marijuana cigarette was inherently incredible much less to enter a judgment of acquittal or grant a new trial.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk

5