# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 24, 2023　　　　　Decided August 1, 2023

No. 22-3017

UNITED STATES OF AMERICA,
APPELLEE

v.

JOHNNIE GAMBLE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00255-1)

---

*Tony Axam, Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Chimnomnso N. Kalu*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Kevin Birney*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, WILKINS and PAN, *Circuit Judges*.

2

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

Concurring opinion filed by *Chief Judge* SRINIVASAN.

Concurring opinion filed by *Circuit Judge* PAN.

SRINIVASAN, *Chief Judge*:   In November 2020, a D.C. Metropolitan Police Department officer approached appellant Johnnie Gamble and asked if he was carrying a gun.   Gamble said no, and the officer then told Gamble to show his waistband, which Gamble did.   The officer noted an object tucked behind Gamble's pants and instructed Gamble to lift his shirt again.   Gamble complied, but he then turned and fled. During the ensuing chase, Gamble discarded a firearm, which officers recovered before apprehending him.

Gamble was charged with unlawful possession of a firearm by a person who has been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).   He moved to suppress the firearm, contending that it was the fruit of an unlawful seizure. The district court denied the motion, reasoning that Gamble had not been seized until the second time he was told to show his waistband, by which time, in the court's view, reasonable suspicion supported the seizure.   We conclude, though, that Gamble had been seized the first time the officer told Gamble to show his waistband, a statement the district court viewed to be a "demand" or "command" by the officer.   The government neither contests that characterization nor attempts to show that there was reasonable suspicion for a seizure at that time.   We thus vacate the denial of Gamble's suppression motion.

3

I.

A.

On the evening of November 2, 2020, three Metropolitan Police Department officers on vehicle patrol observed individuals who appeared to be smoking marijuana in the entry to an apartment building. The officers parked their car, and two officers went inside the building to investigate. The third officer, Officer Brian Tejada, remained outside.

Appellant Johnnie Gamble was standing outside the apartment building at the time. When the officers exited their car, Gamble began slowly walking backwards with his hands in the air. Officer Tejada approached Gamble and said, "Just making sure there's no guns, that's it. Ain't got no gun on you, man?" Gamble stopped moving and replied, "No. I'm cool." Officer Tejada then stated to Gamble, "Let me see your waistband." Gamble adjusted the waistband of his pants several times before lifting his jacket to expose his waistband. After Gamble lowered his jacket, Officer Tejada shined a flashlight at Gamble and said, "Lift up your shirt again." Gamble complied, at which point Officer Tejada nodded towards another officer who had arrived at the scene. That officer began taking a few steps towards Gamble, prompting Gamble to turn and sprint away.

As Gamble started to flee, another officer arrived at the scene and ran after Gamble, apprehending him after a fifty-second chase. Before he was caught, Gamble discarded a firearm, which Officer Tejada retrieved.

4

B.

A grand jury charged Gamble with unlawful possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Gamble moved to suppress the firearm from being admitted into evidence against him. He argued that he had been unlawfully seized by Officer Tejada and that the firearm was the fruit of the unlawful seizure.

During the district court's hearing on the suppression motion, Officer Tejada testified that Gamble was not a target of the officers' suspicions when they initially arrived at the scene. Officer Tejada further testified that Gamble already had his hands up when the officers got out of their car, and that Gamble's reaction to the officers was not an uncommon one in Officer Tejada's experience. And according to Officer Tejada, when he then asked Gamble, "Ain't got no gun on you, man?," Gamble was free to leave.

But when Officer Tejada next said to Gamble, "Let me see your waistband," the officer thought Gamble's reaction of adjusting his pants several times before raising his jacket was "a little bit strange" and raised suspicions that Gamble "was trying to conceal something." Mot. Hr'g Tr. at 15, App. 71. After Gamble lifted his jacket to reveal his waistband, Officer Tejada testified that he noticed Gamble was wearing more than one pair of compression pants under his jeans and that he saw an "object in between [Gamble's] compression pants and his white T-shirt." Id. at 15–16. Officer Tejada explained that, in his experience, "[i]ndividuals usually in D.C. or anywhere, when they use multiple layers of compression pants, it's like kind [of] a makeshift holster for a firearm." Id. at 16. And after Gamble complied with Officer Tejada's ensuing direction to "[l]ift up your shirt again," Officer Tejada saw "a dark in color object in between the compression pants and the white T-

shirt." *Id.* at 18. The object, according to Officer Tejada, was inconsistent with a cellphone or "male anatomy." *Id.* at 67, 69.

The district court denied Gamble's suppression motion. The court twice described Officer Tejada's initial request to see Gamble's waistband—"Let me see your waistband"—as a "demand," explaining that, even if Officer Tejada did not use "a hostile tone of voice," he "clearly makes a demand [to] show me your waist." Status Hr'g Tr. at 7, 12, App. 175, 180. The court also twice characterized that same statement by Officer Tejada as a "command." *Id.* at 8, 12. The court, however, concluded that Gamble was seized only after Officer Tejada's second "demand" (or "command") for Gamble to show his waistband—"Lift up your shirt again." *Id.* at 12. And that seizure was lawful, the court held, because Officer Tejada by then had reasonable suspicion to seize Gamble, based in significant part on what Officer Tejada had seen after his first demand for Gamble to show his waistband—i.e., Gamble's reaction of raising his pants several times before lifting his jacket, his wearing of multiple compression pants under his jeans, and the apparent presence of an object behind those pants. *Id.* at 13–14.

The district court later held a stipulated bench trial, at the close of which the court found Gamble guilty of violating 18 U.S.C. § 922(g)(1). Gamble now appeals the denial of his suppression motion.

## II.

The government argues that Gamble was lawfully seized. It submits that Gamble was not seized until Officer Tejada's second demand for Gamble to show his waistband and that reasonable suspicion had accrued by then. We conclude, however, that Gamble was seized earlier, as of Officer Tejada's

first demand for Gamble to show his waistband. The government fails to establish the existence of reasonable suspicion at that point. We also reject the government's contention that the firearm was not the fruit of that unlawful seizure.

A.

"A Fourth Amendment seizure occurs when physical force is used to restrain movement or when a person submits to an officer's show of authority." *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020) (internal quotation marks and citation omitted). Here, officers did not use physical force against Gamble before he fled, so the questions in assessing if (and when) Gamble was seized are: (i) whether officers made a "show of authority"; and (ii) if so, whether Gamble submitted to the show of authority. *See United States v. Mabry*, 997 F.3d 1239, 1243 (D.C. Cir. 2021).

As to the first of those questions, "[a] show of authority sufficient to constitute a seizure occurs where the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business, or, put another way, where a reasonable person would have believed that he was not free to leave." *Id.* (internal quotation marks and citation omitted). In examining that issue, we "consider the totality of the circumstances, including whether the suspect was physically intimidated or touched, whether the officer displayed a weapon, wore a uniform, or restricted the defendant's movements, the time and place of the encounter, and whether the officer's use of language or tone of voice indicated that compliance with the officer's request might be compelled." *Id.* (internal quotation marks and citation omitted).

Here, Officer Tejada initially approached Gamble and asked him a question: "Ain't got no gun on you, man?" And it is well-settled that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). But it is also settled that "a consensual encounter with the police can . . . ripen into a show of authority that triggers the Fourth Amendment." *Mabry*, 997 F.3d at 1244. For instance, officers' "questioning can evolve into a show of authority if they convey a message that compliance with their requests is required." *Id.* (internal quotation marks and citation omitted). That is what occurred in this case.

In particular, after Gamble responded "no" when asked if he was carrying a gun, Officer Tejada instructed Gamble: "Let me see your waistband." To be sure, we have held that an officer merely asking, "Can I see your waistband?" is not a show of authority. *United States v. Gross*, 784 F.3d 784, 788 (D.C. Cir. 2015). But that is because of the general notion that officers can ask questions if they "do not convey a message that compliance with their requests is required." *Id.* at 787 (internal quotation marks and citation omitted). Here, by contrast, the district court concluded that Officer Tejada's statement, "Let me see your waistband," carried the message that compliance was obligatory: the court repeatedly described that statement as a "demand" or "command," on one occasion explaining that it "clearly makes a demand." Page 5, *supra*. And the very nature of a demand or command—as opposed to a mere question—is that compliance is mandatory. *See United States v. Wood*, 981 F.2d 536, 540 (D.C. Cir. 1992) (distinguishing between "positing a question" and "giving an order").

A district court's assessment of whether an officer's statements amounted to "commands" rather than "questions" would, if challenged, be reviewed only for clear error. *Mabry*,

8

997 F.3d at 1244 n.1. Here, though, the government does not contest the district court's considered characterization of Officer Tejada's statement as a command, so we have no occasion to revisit it. And because a reasonable person would not feel free to disregard that kind of command by an officer and simply go about his business, Officer Tejada's statement— "Let me see your waistband"—amounted to a show of authority. *See Wood*, 981 F.2d at 540; *cf. California v. Hodari D.*, 499 U.S. 621, 627 (1991) ("[P]olicemen do not command 'Stop!' expecting to be ignored . . . .").

That show of authority by Officer Tejada thus effected a seizure if Gamble submitted to it. *See Mabry*, 997 F.3d at 1243. On that score, the government makes no argument that, if Officer Tejada's statement constituted a show of authority, Gamble did not submit to it. That is understandable, as Gamble acceded to Officer Tejada's show of authority by staying in place and complying. *See, e.g.*, *Brendlin v. California*, 551 U.S. 249, 262 (2007) ("[O]ne sitting in a chair may submit to authority by not getting up to run away."). True, Gamble soon fled after Officer Tejada told him a second time to show his waistband. But as we have explained in precisely the same circumstances of a person who initially accedes to a show of authority but then flees, "the short duration of [the person's] submission means only that the seizure was brief, not that no seizure occurred. Later acts of noncompliance do not negate a defendant's initial submission." *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014) (citations omitted); *accord Mabry*, 997 F.3d at 1246–47. So here, even if Gamble's "initial submission" to Officer Tejada's show of authority was of "short duration," a seizure still occurred. *Brodie*, 742 F.3d at 1061.

9

B.

We now turn to whether Officer Tejada's seizure of Gamble when demanding, "Let me see your waistband," was lawful.  For a seizure to be lawful, an officer must have at least "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  And the "government bears the burden to provide evidence sufficient to support reasonable suspicion." *Delaney*, 955 F.3d at 1081 (internal quotation marks and citation omitted).

Here, the government necessarily fails to carry its burden because it does not argue that Officer Tejada had reasonable suspicion to detain Gamble at the time of the seizure—i.e., when Officer Tejada first demanded, "Let me see your waistband."  Rather, the government's sole argument is that reasonable suspicion had accrued by the time Officer Tejada commanded Gamble to show his waistband a second time, by saying, "Lift up your shirt again."  In making that argument, the government relies on facts unknown to Officer Tejada (or any officers at the scene) when he made his first demand, such as Gamble's wearing of multiple layers of compression pants and Officer Tejada's observation of an object tucked under those pants.  And an otherwise unreasonable seizure of course cannot be transformed into a reasonable one by virtue of information that comes to light only after the seizure.  *See United States v. Castle*, 825 F.3d 625, 636 (D.C. Cir. 2016).

C.

We last consider whether the gun discarded by Gamble while being chased after he fled the scene should be suppressed as the fruit of his unlawful seizure.  The government contends that, even if Gamble was unlawfully seized, the gun should not

be suppressed because intervening circumstances—namely, Gamble's flight and his discarding of the firearm—purged the taint of the illegal seizure. That argument cannot be squared with our decision in *United States v. Brodie*.

As we explained there, "[a]n illegal search or seizure calls for suppression of evidence only if the seizure is a but-for cause of the discovery of evidence (a necessary condition), and if the causal chain has not become 'too attenuated to justify exclusion.'" *Brodie*, 742 F.3d at 1062–63 (quoting *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)). *Brodie* involved facts closely paralleling this case: the officers unlawfully seized Brodie, and he attempted to flee on foot a few seconds later, discarding three firearms during the ensuing chase. *Id.* at 1060. We held that the "but-for causation" between the unlawful seizure and the recovery of the discarded firearms was "quite plain." *Id.* at 1063. And we rejected the government's argument that "Brodie's flight and abandonment of evidence were intervening circumstances that purged the taint." *Id.* Rather, "[a]s those events flowed directly from the seizure," it was "hard to spot any attenuation." *Id.*

That holding governs here. While the government "believe[s] that this case presents an opportunity for this Court to re-examine the wisdom of *Brodie*," Gov't Br. 37 n.12, a panel of this court is bound by *Brodie* in materially indistinguishable circumstances like those in this case.

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's denial of Gamble's suppression motion as well as his ensuing conviction, and we remand for further proceedings.

*So ordered.*

SRINIVASAN, *Chief Judge*, concurring: This case is an example of a situation in which police seize a person under the Fourth Amendment without physically touching him. That can happen when police issue a verbal command such as "Stop!"— or, as in this case, "Let me see your waistband"—such that a reasonable person would not feel free to disobey the directive and go about his business. If the person submits to such a show of authority by an officer, a seizure will have taken place, even though there has been no physical contact in the interaction. *See* Op. 6, *supra*.

But what does it mean for a person subjected to an officer's show of authority to "submit" to it for purposes of establishing a seizure? The answer is straightforward when an officer commands, "Stop!" A person submits to that show of authority by staying in place, at which point there is a seizure. What if the officer, though, commands a person to do more than stop? In this case, for example, Officer Tejada demanded that Gamble not just stay put but also show his waistband. Gamble plainly submitted because he both remained in place and showed his waistband. Imagine, though, that Gamble had instead said in response to Officer Tejada's demand, "I'll stay in place because you're not letting me leave, but I won't show you my waistband." Would that count as submitting to the show of authority, thereby establishing a seizure?

The premise of my colleague's concurring opinion is no— i.e., that Gamble could not submit to Officer Tejada's show of authority unless (and until) he showed his waistband. *See* Concurring Op. 1–2, *infra*. If so, Gamble's ostensibly pre-submission—and hence pre-seizure—act of raising his pants before showing his waistband could have been advanced by the government as a fact supporting reasonable suspicion for the seizure. *Id.* at 2. As my colleague notes, there would still be a question whether an order to show one's waistband ranges beyond the permissible scope of a frisk under *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968). But whatever the answer to that

question, as to the issue of what Gamble would need to do to submit to Officer Tejada's show of authority for purposes of establishing a seizure, Gamble, under my colleague's approach, would need to show his waistband.

As I see things, though, a person presumably submits to an officer's show of authority—and thus becomes seized—when he stays in place rather than leaves. And that is so even if the officer also commanded the person to show his waistband (or open his coat, empty his pockets, display the contents of his backpack, or perhaps all of the above) and the person has not complied with those kinds of additional demands. After all, a stop-and-frisk under *Terry* involves both a seizure (a stop) and a search (a frisk), and they are distinct Fourth Amendment events. *E.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 n.2 (2000). The question of whether a person has submitted to an officer's show of authority goes to whether he has been *seized*, *see California v. Hodari D.*, 499 U.S. 621, 623–28 (1991)—which, in the case of a stop-and-frisk, occurs when there is a stop. To the extent the officer demands that the person also assent to some manner of frisk or other *search*, that raises distinct Fourth Amendment issues beyond whether there has been a seizure.

Under that understanding, Gamble became seized when he stayed in place in response to Officer Tejada's show of authority. It is true that Officer Tejada commanded Gamble to show his waistband, but that directive necessarily carried an implicit demand to remain in place—after all, Gamble could not show his waistband to the officer if he turned and walked away. My colleague supposes that a person in theory could show his waistband while walking away, Concurring Op. 3, but if an order to show one's waistband in fact permitted walking away, it may not have been a show of authority in the first place. *See United States v. Mabry*, 997 F.3d 1239, 1243 (D.C. Cir. 2021) (show of authority occurs "where a reasonable

person would have believed that he was not free to leave") (internal quotation marks and citation omitted). Here, then, once Gamble stayed in place in response to the officer's show of authority, he was seized, regardless of whether he had also complied with the demand to accede to a search by showing his waistband.

PAN, *Circuit Judge*, concurring: I fully concur with the Court's opinion. The government bears the burden of justifying a seizure under the Fourth Amendment, *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020), and it failed to do so here. Before the district court, and in this Court on appeal, the government made no argument that if Gamble were seized when Officer Tejada first demanded to see his waistband, such a seizure was lawful. I write separately to observe that, despite the government's failure to address the issue, Gamble's initial seizure may well have been supported by reasonable, articulable suspicion.

As the Court's opinion notes, a seizure occurs when "physical force is used to restrain movement or when a person submits to an officer's show of authority." *Id.* (internal quotation marks and citation omitted). The point of seizure is when there is "*submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original); *accord United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000).

Officer Tejada's statement, "Let me see your waistband," effected a seizure because the district court characterized it as a "command" or a "demand." Op. at 5. At the point when Gamble submitted to that first show of authority by lifting his shirt, several factual findings by the district court arguably supported a finding of reasonable suspicion.

First, the encounter occurred "in a high crime area" with a "history of criminal activity in the area specifically related to . . . both violent and nonviolent related gun matters." App. 172; *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis."); *United States v. Edmonds*, 240 F.3d 55, 60 (D.C. Cir. 2001) ("[T]he probative value of a neighborhood's reputation as a high-crime area is firmly established."); *but see United States*

*v. Castle*, 825 F.3d 625, 636 (D.C. Cir. 2016) ("[T]he high crime nature of the neighborhood . . . is not unimportant. But it is only a contextual consideration and, as such, cannot provide the kind of information particular to Appellant that is necessary to demonstrate reasonable suspicion." (cleaned up)).

Second, when the officer got out of his car, the officer "saw the defendant separating himself from the other men he had been standing with and not only was [the defendant] separating himself, but had his hands up, which could be construed in different ways." App. 173; *Wardlow*, 528 U.S. at 124 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *Edmonds*, 240 F.3d at 60 (positing that law enforcement officers' "training and experiences enable [them] to draw inferences and make deductions from seemingly innocuous facts . . . that might well elude an untrained person" (cleaned up)).

Third, and most significantly, in response to the officer's "demand" to show his waistband — and before he *submitted* to this show of authority — Gamble "[didn't] just pull up his shirt or jacket to show his waist, but he also pull[ed] up his pants in the process which . . . [was] suspicious." App. 175. Instead of just raising his shirt, Gamble "[sought] to try and actually conceal [his] waist." *Id.*; *see Johnson*, 212 F.3d at 1317 (reasoning that "continued furtive gestures" in response to being confronted by a police officer is "suspicious enough to support a reasonable belief that [a defendant] may have been engaged in criminal activity").

I express no opinion as to whether these facts, if argued, would have changed the outcome of this case. Notably, another issue left unexplored by the parties is whether an officer's demand to see a suspect's waistband that implicitly requires the suspect to lift his shirt is within the lawful scope of a *Terry*

stop. *Compare Terry v. Ohio*, 392 U.S. 1, 30–31 (1968) (allowing officers "to conduct a carefully limited search of the *outer* clothing" of a suspect, based on reasonable, articulable suspicion that the suspect is armed (emphasis added)), *with United States v. Askew*, 529 F.3d 1119, 1133, 1144 (D.C. Cir. 2008) (en banc) (holding that partially unzipping and peeling back a suspect's jacket to reveal the clothing underneath "exceed[s] the bounds of *Terry*" and thus violates the Fourth Amendment).   If the officer's demand to see Gamble's waistband went beyond what *Terry* permits, then the officer's reasonable, articulable suspicion would be insufficient to justify either a stop or a search.  *See Askew*, 529 F.3d at 1144. Instead, the government would be required to establish probable cause to arrest the defendant, which would allow a search incident to arrest, *see Chimel v. California*, 395 U.S. 752 (1969), or some other "well delineated exception[]" to the warrant requirement under the Fourth Amendment, *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).

My colleague's concurring opinion disagrees with my view that Gamble's submission to the show of authority occurred when he lifted his shirt to reveal his waistband; my colleague suggests instead that Gamble's submission began at the moment he stayed in place in response to Officer Tejada's demand.  But "Let me see your waistband" does not necessarily require a suspect to stay in place — a suspect could show an officer his waistband while backing up or walking away.  In my opinion, whether a suspect submitted to a show of authority is a fact-based inquiry premised on compliance with an officer's specific demand.  *See, e.g.*, *United States v. Veney*, 45 F.4th 403, 406 (D.C. Cir. 2022) (parsing an officer's specific demand and concluding that it "left no doubt that in addition to wanting [the suspect] to turn around[,] . . . [the officer] also wanted [the suspect] *not* to walk away" (emphasis in original)); *United States v. Wood*, 981 F.2d 536, 540 (D.C.

Cir. 1992) ("To satisfy the second prong of *Hodari D.*, the court must determine whether Wood's actions constituted a *submission* to the assertion of authority." (internal quotation marks omitted) (emphasis in original)); *Brendlin v. California*, 551 U.S. 249, 262 (2007) ("[W]hat may amount to submission depends on what a person was doing before the show of authority."). Under the facts of this case, I believe that Gamble's submission to a show of authority (and thus his seizure) occurred when he showed his waistband, just as Officer Tejada commanded.